OCTOBER AND NOVEMBER TERM, 1881, No. 238.

# Overseers of Plum Creek *versus* Overseers of South Bend.

1. The hiring as a servant, by which a pauper may gain a settlement under section 9, of the act of June 13, 1836, must be upon such an agreement to pay wages or bargain as could be enforced in a suit at law.

2. Where the pauper went to live with his uncle for an indeterminate period of service, and the latter took him into his family partly from benevolent motives, expecting to take care of him, and in return receiving the benefit of his labor, it was not sufficient to give him a settlement.

ERROR to the Court of Quarter Sessions of *Armstrong County.*

Appeal of the overseers of the poor of South Bend township, from an order of removal made by two justices, removing Stephen Linsenbigler, a pauper, from Plum Creek township, to the said South Bend township.

[Overseers of Plum Creek v. Overseers of South Bend.]

From the depositions taken in support of and against the appeal, the following facts appeared.

Stephen Linsenbigler, the pauper, was twenty-two years of age, January 17, 1879. His parents had a settlement in Plum Creek township. About July 6, 1876, Stephen, while still a minor, went to live with his uncle, Daniel Rupert, in South Bend township. He came of age, January 17, 1878, and remained there until the following October.

W. A. Hannah testified : " There was no contract at all, whatever, that I knew of."

Daniel Rupert testified: " I never had a bargain to keep Stephen Linsenbigler; I never had hired him, I only kept him here to keep him off the township, as long as I could attend to him ; when I could not attend to him I sent him home. We clothed him and kept him as one of my own family. Sent him home with good clothes, got him a pair of new boots and sent them with him."

Daniel Linsenbigler testified: " Stephen Linsenbigler was not hired at Daniel Rupert's by my knowledge. He was there something over two years; he never received anything but his victuals and clothes. He went there from William Hannah's. Stephen Linsenbigler was twenty-two years old the 17th day of January, 1879; he went to Daniel Rupert's in July, 1876. They said he was a good boy to work. He got his boarding and clothes and his washing done there. They never gave me anything as pay for his work. I do not mind of Stephen saying Mr. Rupert wanted him to stay there. He is subject to some kind of spasms. Mr. Rupert told me in October last to come and take him away."

W. A. Hannah testified: " I was there on the 4th day of July, and they, Mrs. Daniel Rupert said she would like if he would come and stay there. They said they would use him as one of their own family if he would come.

" There was nothing said about wages, only they would use him as one of their own ; were afraid he would get hurt among the horses.

" I understood that should be his home while they could take care of him."

Christina Wise testified: " The article of flour and other things were given or offered as presents, and not in payment of any debt."

Catharine Linsenbigler testified: " Mrs. Rupert told me that since Stephen liked to stay there, she would take him and keep him as her own boy. The boy made that his home from the time he commenced there, pretty much. I

think that the boy made his home at Mr. Daniel Rupert's about one year and six months."

F. S. Linsenbigler testified : " My aunt, Mrs. Rupert, told me he was to get so much, I do not know what amount. She told me she would keep him there, and board and clothe him and wash for him as one of her own. After he would become of age, she was to give him a cow and bed, and whatever he would need. I understood by Stephen and Mrs. Rupert both that that was to be his home. He was to stay there till he was of age or got married, and that he was to get these things for his labor. I think he was about twenty-two years of age in January. I do not know how long he was there, but am certain it was over two years. He told me this was the contract after he became of age. I have this from my aunt and uncle Daniel, that this was the contract after he became of age.

" I suppose the contract was made between the old folks. He certainly received wages."

Counsel for the overseers of Plum Creek asked the Court to decide as follows :

" The Court is respectfully requested to hold and decide, that if the father of Stephen Linsenbigler consented to his living with his uncle Daniel Rupert, in South Bend township, as one of his, Rupert's, family, and Rupert so received him, and he remained with him for over a year, in that event he would gain the residence of Daniel Rupert, and as a pauper would be chargeable to the township of South Bend."

The Court, NEALE, P. J., refused this point, on request sealing a bill of exceptions, and filed an opinion, *inter alia*, as follows :

"From the testimony it is clear that the pauper went to live with his uncle, Daniel Rupert, before he was of age, and continued with him some nine months after reaching majority. A contract made by the minor, unless he was emancipated from his father, or ratified by the father, would not be a contract in law, but it might be such an agreement as would meet the requirements of the act of 13th June, 1836, which only contemplates a hiring for the recovery of wages. Suit could be maintained, and the price fixed would stand as the measure of damages. The law does not require that money wages shall be stipulated for, but it is a corollary plainly deducible that if there should be a hiring there should be payment or agreement to pay wages, a bargain, something that could be enforced in law. Could anything under the evidence in this case be recovered from Daniel Rupert if suit had been brought by the pauper or the father

of the pauper in his behalf? The law holds that as between near relations a contract for service must be clearly established and will not be implied. We think in this case the weight of evidence would be against a recovery.

"And we think the same result would follow if suit were brought to enforce a contract even for maintenance, as the evidence scarcely establishes any certain and determinate period of service.

"Viewing the whole case from such light as the evidence sheds upon it, it would seem that the boy Stephen Linsenbigler was subject to spasms, and had been living with his sister, Mrs. Hannah, and was by her transferred to his uncle, Daniel Rupert, who took him into his family partly from benevolent motives, expecting to take care of him, and in return receiving the benefit of his labor. His father not being of sufficient ability to provide for him, a service without hiring would not be sufficient to establish or gain a settlement: Overseers of Lewistown *v.* Overseers of Granville, 5 Barr, 283–84. Mere taking one in charity will not gain a settlement: Ibid. In the case of Overseers of Tioga *v.* Overseers of Lawrence, 2 Watts, 43, very slight evidence was accepted to establish a contract of hiring. 'To constitute such a contract any declarations or acts of the parties which evince their assent to an agreement expressed at the time is sufficient.' Both Rupert and Linsenbigler disclaim any such fact in this case, and none is shown by the evidence of Mrs. Hannah. This case has the distinguishing feature also of being between near relatives, which is recognized as raising no implied promises, as would be in the case between strangers: See Moreland Township *v.* Davidson Township, 21 P. F. S., p. 377. In the case of Heidleberg *v.* Lynn, 5 Wharton, 432, the contract of hiring was expressly shown, and it was there held that the hiring was only necessary as evidence that the service was valuable.

"As it is clear that the father had his settlement in Plum Creek township, which became the settlement of the children till by such acts as the statute prescribed a new settlement should be acquired, we think that the evidence of such acts should be free from uncertainty.

"Therefore, this 1st August, 1881, the Township of Plum Creek is declared to be the place of the last legal settlement of said Stephen Linsenbigler. The appeal of the overseers of South Bend Township is sustained, and it is ordered that the Township of Plum Creek pay the costs of these proceedings."

The Township of Plum Creek excepted to this ruling and

[Overseers of Plum Creek *v.* Overseers of South Bend.]

decree, and took out a writ of error, assigning as errors the refusal to affirm the point submitted and the making of the decree.

*E. S. Golden* for plaintiff in error.

Had the question in this case been one of contract, there was enough evidence from which to infer a hiring. But this was not really the point in the case. The question was one of *quasi* adoption by Daniel Rupert, and of emancipation by the father of the pauper. This was the effect of the point submitted by the Township of Plum Creek, which was refused by the Court. I think the case is clearly within the rule announced in the following decision:

" If a father gives away his child to a person living in another town, with whom he afterwards lives as their own child, without interference or assistance on the part of the father, the child is emancipated, and may gain a settlement for himself while a minor:" Portland *v.* New Gloucester, 4 Shep., 427.

This ruling is sustained by the authorities cited in Burns's Justice, vol. 3, 11th edition, pp. 317, 352.

*Gilpin* and *McCain* for defendant in error.

The reasoning of the learned judge in the Court below, as also the opinion of this court in Lewistown. *v.* Granville, 5 Barr, 283, and in Moreland Township case, reported in 21 Smith, 377, 3 W. N. C., 20, and 7 W. N. C., 12, would seem, aside from the plaintiff's admissions, to settle beyond question that the mere fact of Daniel Rupert, of South Bend Township, receiving and supporting merely as a charity his imbecile nephew, who was minor and settled in Plum Creek Township, would not be sufficient to give to said nephew a settlement in South Bend Township, and that the action of the Court below in sustaining the appeal of the overseers of South Bend Township, etc., was right.

Nov. 7th, 1881.—PER CURIAM: The order and decree in this case is affirmed upon the opinion of the learned judge in the Court below.

Judgment affirmed.